# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP2490 |
| COMPLETE TITLE: | Susan Schwegel and Susan Jaskulski, |
| | Plaintiffs, |
| | Wisconsin Federation of Nurses and Health Professionals , |
| | Local 5001, AFT, AFL-CIO and Association of Milwaukee County Attorneys, |
| | Plaintiffs-Respondents-Petitioners, |
| | v. |
| | Milwaukee County, |
| | Defendant-Appellant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 351 Wis. 2d 421, 839 N.W.2d 869)
(Ct. App. 2013 – Published)
PDC No: 2013 WI App 134

| | |
|---|---|
| OPINION FILED: | February 12, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 1, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Christopher R. Foley |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | PROSSER, J., concurs. (Opinion filed.) |
| DISSENTED: | ABRAHAMSON, C.J., BRADLEY, J., dissents. (Opinion filed.) |

ATTORNEYS:

For the plaintiffs-respondents-petitioners, there were briefs by *Jeffrey P. Sweetland* and *Hawks Quindel, S.C.*, Milwaukee, and oral argument by *Jeffrey P. Sweetland*.


For the defendant-appellant, there was a brief by *Alan M. Levy* and *Lindner & Marsack, S.C.*, Milwaukee. Oral argument by *Alan M. Levy*.

**2015 WI 12**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP2490
(L.C. No. 2012CV1528)

STATE OF WISCONSIN : IN SUPREME COURT

**Susan Schwegel and Susan Jaskulski,**

       **Plaintiffs,**

**Wisconsin Federation of Nurses and Health Professionals, Local 5001, AFT, AFL-CIO and Association of Milwaukee County Attorneys,**

       **Plaintiffs-Respondents-Petitioners,**

       **v.**

**Milwaukee County,**

       **Defendant-Appellant.**

**FILED**

**FEB 12, 2015**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed; cause remanded to the circuit court to dismiss the complaint.*

¶1 PATIENCE DRAKE ROGGENSACK, J. We review a published decision of the court of appeals[1] reversing an order of the circuit court[2] that granted summary judgment to the Wisconsin

---

[1] Wis. Fed'n of Nurses & Health Prof'ls, Local 5001 v. Milwaukee Cnty., 2013 WI App 134, 351 Wis. 2d 421, 839 N.W.2d 869.

[2] The Honorable Christopher R. Foley of Milwaukee County presided.

Federation of Nurses and Health Professionals (Wisconsin Federation), the Association of Milwaukee County Attorneys (County Attorneys), Wisconsin Federation member Susan Schwegel, and County Attorneys member Susan Jaskulski. Our review focuses on the interpretation of a Milwaukee County General Ordinance (MCGO), § 17.14(7)(ee)(1) (2011), that prospectively eliminated Medicare Part B premium reimbursement upon retirement for employees who did not retire before retirement dates established by Milwaukee County.

¶2 Plaintiffs claim a vested contract right to reimbursement of Medicare Part B premiums upon retirement, even though they have not yet retired.[3] We conclude that Milwaukee County did not abrogate a vested contract right when it prospectively modified a health insurance benefit it offered for employees who had not yet retired. We further conclude that County employees have a vested contract right to Medicare Part B premium reimbursement when they fulfill all three criteria for its payment: (1) reaching retirement age; (2) providing 15 or more years of credited county service; and (3) retiring before

---

[3] In their complaint, plaintiffs claim that MCGO § 17.14(7)(ee)(1) (2011) is unconstitutional as applied to them because it impairs a vested contract right, contrary to Article I, Section 12 of the Wisconsin Constitution, and is a deprivation of property without just compensation, contrary to Article I, Section 13 of the Wisconsin Constitution. However, before us, plaintiffs contend they have a vested contract right, without continuing that contention in the context of a constitutional claim. Therefore, we too limit our discussion to whether plaintiffs have a vested contract right to reimbursement of Medicare Part B premiums when they retire.

the dates established by Milwaukee County.  Employees who do not meet all three criteria have not fulfilled the requirements necessary to establish a vested contract right to reimbursement.  Therefore, we affirm the decision of the court of appeals that granted summary judgment to Milwaukee County.

## I.  BACKGROUND[4]

¶3  Plaintiffs claim that MCGO § 17.14(7)(ee)(1) (2011) impairs their vested contract right to reimbursement of Medicare Part B premiums when they retire.[5]  Accordingly, we must decide whether § 17.14(7)(ee)(1) (2011)'s prospective modification of the County's obligation to reimburse Medicare Part B premiums at retirement for Susan Schwegel, Susan Jaskulski, members of Wisconsin Federation and members of County Attorneys who were of retirement age, had 15 years of credited service to the County, but who did not retire by the dates established in § 17.14(7)(ee)(1) (2011), breached a vested contract right.

¶4  Plaintiffs moved for summary judgment enjoining the application of MCGO § 17.14(7)(ee)(1) (2011) and requiring the County to continue to reimburse Medicare Part B premiums for affected plaintiffs when they retire and become Medicare-

---

[4] The parties entered into a Stipulation of Facts for purposes of summary judgment.  Facts employed herein were taken from that stipulation.

[5] A vested contractual right is one that cannot be abrogated without breaching the contract from which it arises.  See Society Ins. v. LIRC, 2010 WI 68, ¶69, 326 Wis. 2d 444, 786 N.W.2d 385.

eligible.  The County moved for summary judgment dismissing the plaintiffs' action.

¶5  The facts relevant to the parties' cross-motions for summary judgment are not in dispute.[6]  In 1937, the legislature instructed counties with populations of 500,000 or more to establish retirement systems for their employees.  Ch. 201, Laws of 1937.

¶6  Effective January 1, 1938, Milwaukee County created the Milwaukee County Employees Retirement System (MCERS) pursuant to Chapter 201 of the Laws of 1937.  Although MCERS was created by the County, it was then controlled by the State.  The Laws of 1945 again addressed the State-controlled MCERS.  Ch. 138, Laws of 1945.  Those laws provided in relevant part:

> (2) CONTRACTS TO ASSURE BENEFITS.  The benefits of members . . . and of beneficiaries of deceased members . . . shall be assured by benefit contracts as herein provided:
>
> (a) . . . [E]ach member and beneficiary having such a benefit contract shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by any other means without his consent.

¶7  Effective January 1, 1955, Milwaukee County first participated in health insurance for its employees.  The County did so under Chapter 17 of the Milwaukee County General Ordinances.  MCGO § 17.14(8) (1955).  In the years following, § 17.14 was amended many, many times.  We relate only those amendments that bear on the dispute before us.  One such

---

[6] See note 4 above.

amendment occurred in 1967, when Milwaukee County began providing health insurance for retired employees. § 17.14(7) (1967).

¶8 In 1965, the legislature granted home rule authority over MCERS to Milwaukee County. Ch. 405, Laws of 1965.[7] The 1965 shift to home rule empowered Milwaukee County "to make any changes in such retirement system which hereafter may be deemed necessary or desirable for the continued operation of such retirement system." Id. at § 2. Chapter 405 of the session laws also provided that "no such change shall operate to diminish or impair the annuities, benefits or other rights of any person who is a member of such retirement system prior to the effective date of any such change." Id.

---

[7] Section 2 of Chapter 405, Laws of 1965, provides:

> For the purpose of best protecting the employes subject to this act by granting supervisory authority over each retirement system created hereunder to the governmental unit most involved therewith, it is declared to be the legislative policy that the future operation of each such retirement system is a matter of local affair and government and shall not be construed to be a matter of state-wide concern. Each county which is required to establish and maintain a retirement system pursuant to this act is hereby empowered, by county ordinance, to make any changes in such retirement system which hereafter may be deemed necessary or desirable for the continued operation of such retirement system, but no such change shall operate to diminish or impair the annuities, benefits or other rights of any person who is a member of such retirement system prior to the effective date of any such change.

¶9 In 1989, the County limited those employees who qualify for continuation of health insurance benefits upon retirement at County expense: "The County shall pay the full monthly cost of providing such coverage for employes who commenced their employment with Milwaukee County prior to July 31, 1989." MCGO § 17.14(7)(a) (1989). The County also limited the continuation of retiree health insurance benefits at County expense through a years-of-service requirement: "[t]he provisions of (a) shall apply to retired members of [MCERS] with 15 or more years of creditable pension service as a County employe." § 17.14(7)(h) (1989). At the time both individual plaintiffs began employment with Milwaukee County, the County's retirement health insurance benefits included Medicare Part B premium reimbursement for those employees who had met the criteria set out in § 17.14(7)(h) (1989).[8]

¶10 In 1996, MCGO § 17.14(7)(h) was again amended. The amendment provided: "The provisions of this subsection are

---

[8] Susan Jaskulski began County employment on June 15, 1989. Susan Schwegel began County employment March 19, 1990. Although MCGO § 17.14(7)(h) (1989) internally references a date limitation for continuation of health insurance at County expense, by 2011, this start-of-employment limitation was no longer present in Chapter 17. Instead, in 2011, § 17.14(7)(dd) (2010), provided the conditions required for continuation of health insurance benefits at County expense.

considered a part of an employee's vested benefit contract as more fully set forth in 201.24(5.91)."[9]

¶11 In 2011, an amendment adding language to MCGO § 17.14(7)(ee)(1) (2010) restricted the applicability of paragraph (ee) that addressed payment of Medicare Part B premiums for retired employees. After the 2011 revision, § 17.14(7)(ee)(1) read:

> The provisions of section (ee) shall not apply to members not represented by a collective bargaining unit who retired and began receiving benefits from the Milwaukee County Employees Retirement System after April 1, 2011, nor to members represented by the . . . Association of Milwaukee County Attorneys . . . who retired and began receiving benefits from the Milwaukee County Employees Retirement System after December 31, 2011, nor to members represented by the Federation of Nurses and Health Professionals who retired and began receiving benefits from the

---

[9] Plaintiffs note the reference to "201.24(5.91)" appears to have been a drafting error and should have been "201.24(5.10)." The County does not dispute plaintiffs' contention; accordingly, hereinafter, we refer to § 201.24(5.10), rather than § 201.24(5.91).

MCGO § 201.24(5.10) (1996), provided: "Members who retire with sufficient pension service credit as noted in chapter 17 of the Code, or the appropriate labor agreement, shall be provided with paid health insurance as noted in chapter 17 of the Code, however such benefit shall not be funded via the pension fund."

Milwaukee County Employees Retirement System after December 31, 2012.[10]

¶12 In summary, after the 2011 amendment to MCGO § 17.14(7)(ee)(1), the Medicare Part B reimbursement modification required that members of County Attorneys had to retire on or before December 31, 2011, and members of Wisconsin Federation had to retire on or before December 31, 2012, in order to secure County reimbursement for Medicare Part B premiums upon retirement.

¶13 Both parties moved for summary judgment. The circuit court granted plaintiffs' motion, concluding that qualifying employees have a vested benefit contract requiring Medicare Part B premium reimbursement, and the County's refusal to reimburse premiums upon those employees' retirements would constitute a material breach of their vested rights. The circuit court noted that it relied on Welter v. City of Milwaukee, 214 Wis. 2d 485, 571 N.W.2d 459 (Ct. App. 1997), and Rehrauer v. City of Milwaukee, 2001 WI App 151, 246 Wis. 2d 863, 631 N.W.2d 644, which may have conflicted with Loth v. City of Milwaukee, 2008 WI 129, 315 Wis. 2d 35, 758 N.W.2d 766.

---

[10] Wisconsin Federation and the County were parties to a collective bargaining agreement covering Wisconsin Federation's wages, hours, and conditions of employment, including coverage under the County's group health insurance program. The Wisconsin Federation-County collective bargaining agreement expired December 31, 2012. County Attorneys and the County were parties to a collective bargaining agreement covering County Attorneys' wages, hours, and conditions of employment, including coverage under the County's group health insurance program. The County Attorneys-County collective bargaining agreement expired December 31, 2011.

¶14 The court of appeals reversed and granted summary judgment to Milwaukee County. Wis. Fed'n of Nurses & Health Prof'ls, Local 5001 v. Milwaukee Cnty., 2013 WI App 134, ¶16, 351 Wis. 2d 421, 839 N.W.2d 869. The court of appeals reasoned that it was bound by Loth. Id., ¶11. The court of appeals agreed with the circuit court "that Loth appears at odds with both Welter . . . and Rehrauer . . ., and that Loth discussed neither decision." Id. The court of appeals, however, declined to "discuss or distinguish either Welter or Rehrauer." Id. Rather, applying Loth, the court of appeals concluded that employees were merely eligible for vested benefits until they had completed all prerequisites, including actually retiring, and that the County was not restricted from modifying Medicare Part B premium reimbursement until employees' eligibility matured into entitlement by employees fulfilling all the conditions necessary to receipt of the benefit.[11] Id., ¶14.

¶15 We granted plaintiffs' petition for review and now affirm the decision of the court of appeals.

## II. DISCUSSION

¶16 Plaintiffs claim that MCGO § 17.14(7)(ee)(1) (2011), which prospectively modifies the County's obligation to reimburse Medicare Part B premiums upon retirement for plaintiffs who were of retirement age, had 15 years of credited

---

[11] The court of appeals did note "It is true, of course, that once eligibility matures into entitlement, a benefit may not be retroactively modified or eliminated." Wis. Fed'n, 351 Wis. 2d 421, ¶14. The County does not dispute the court of appeals' conclusion.

service to the County, but who had not retired by the dates established in § 17.14(7)(ee)(1) (2011), impairs their vested contract right to be reimbursed for Medicare Part B premiums when they retire. This contention requires us to focus on legislative enactments and County ordinances.

## A. Standard of Review

¶17 Plaintiffs claim their vested contract right arises from their employment by Milwaukee County. They rely on laws that they assert preclude the enactment of MCGO § 17.14(7)(ee)(1) (2011) and on their interpretations of prior ordinances, which they claim Milwaukee County was not free to amend.

¶18 The interpretation and application of session laws or statutes present questions of law that we independently review, while benefiting from previous court discussions. Spiegelberg v. State, 2006 WI 75, ¶8, 291 Wis. 2d 601, 717 N.W.2d 641. Likewise, construction of an ordinance under undisputed facts is a question of law for our independent review. Browndale Int'l, Ltd. v. Bd. of Adjustment for Dane Cnty., 60 Wis. 2d 182, 200, 208 N.W.2d 121 (1973).

¶19 The court of appeals granted summary judgment to Milwaukee County. When we review summary judgment, we independently apply the same methodology as the court of appeals and the circuit court, benefiting from their discussions. Loth, 315 Wis. 2d 35, ¶9; Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶14, 309 Wis. 2d 541, 749 N.W.2d 581.

¶20 We begin with the complaint to determine whether it arguably states a claim; if it does, we then review the answer to see whether issues of material fact or law have been joined. Hoida, Inc. v. M&I Midstate Bank, 2006 WI 69, ¶16, 291 Wis. 2d 283, 717 N.W.2d 17. If we conclude that the complaint and answer are sufficient to join issue, we examine the moving party's affidavits to support the motion and the affidavits that oppose the motion. Id. Summary judgment is appropriate when there are no genuine disputes of material fact. Admanco, Inc. v. 700 Stanton Drive, LLC, 2010 WI 76, ¶28, 326 Wis. 2d 586, 786 N.W.2d 759. The parties do not dispute material facts giving rise to plaintiffs' claims.[12]

### B. Contractual Rights

¶21 Plaintiffs claim MCGO § 17.14(7)(ee)(1) (2011) abrogated a vested contractual right. Section 17.14(7)(dd) and (ee)(1) (2011) are relevant to plaintiffs' claims. They provide:

> (dd) The county shall pay the full monthly cost of providing such coverage to retired members of the county retirement system with fifteen (15) or more years of creditable pension service as a county employe. . . .
>
> (ee) Retired members of the county retirement system who are eligible for continuing their health insurance benefits at county expense under the provision of this section shall be eligible for reimbursement of the cost of their Medicare Part B premiums, as well as the Medicare Part B premiums of their eligible spouse and dependents.

---

[12] See note 4 above.

11

(1) The provisions of section (ee) shall not apply to members not represented by a collective bargaining unit who retired and began receiving benefits from the [MCERS] after April 1, 2011, nor to members represented by . . . the Association of Milwaukee County Attorneys . . . who retired and began receiving benefits from [MCERS] after December 31, 2011, nor to members represented by the Federation of Nurses and Health Professionals who retired and began receiving benefits from [MCERS] after December 31, 2012.

The question we must decide is whether earlier versions of § 17.14(7), in combination with certain session laws or statutes, vested a contractual right to reimbursement of Medicare Part B premiums at retirement such that the County was not free to modify it prospectively for employees who had not yet retired.[13]

¶22 Plaintiffs rely on laws and ordinances that apply to MCERS; we consider them as well. We apply rules of statutory interpretation to the interpretation of ordinances. Marris v. City of Cedarburg, 176 Wis. 2d 14, 32, 498 N.W.2d 842 (1993). "[T]he purpose of statutory [and ordinance] interpretation is to determine what the statute [or ordinance] means so that it may be given its full, proper, and intended effect." State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. If a statute's [or ordinance's]

---

[13] Although plaintiffs do not allege abrogation of their rights because of other modifications of health insurance under MCGO § 17.14(7), we note that in 2010, (7)(d) increased the amount of employees' part-payment of premiums; (7)(n) increased employees' deductibles; (7)(o) increased employees' co-pays for office visits; (7)(q) increased employees' out-of-pocket payments; and (7)(r)-(u) increased employees' co-pays for many other services such as visits to the emergency room.

meaning is plain, "we ordinarily stop the inquiry." Id., ¶45 (quoting Seider v. O'Connell, 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659). "Statutory [and ordinance] language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id.

¶23 Plaintiffs contend that their vested contract right arises in MCGO § 17.14(7)(h) (1996) that provides: "The provisions of this subsection are considered a part of an employee's vested benefit contract as more fully set forth in 201.24(5.[10])." Plaintiffs refer to MCGO Chapter 201, which contains MCERS, to employ earlier statutory language that applies to pension and death benefits addressed in MCGO Chapter 201, which they now contend applies to health insurance. Plaintiffs attempt to engraft the MCGO pension and death benefit restrictions onto § 17.14(7) (1996) to prevent the County from prospectively modifying health insurance benefits contained in § 17.14(7) (1996).

¶24 An understanding of the history underlying both MCERS and County paid health insurance is helpful in resolving the claim plaintiffs propose. In that regard, we note that Chapter 201 of the Laws of 1937 is the starting point from which MCERS was developed. It provided for the establishment of pension and death benefits for county employees in counties with populations of 500,000 or more:

> Retirement System in Populous Counties; Definitions. In each county having a population of

13

five hundred thousand or more a retirement system shall be established and maintained for the payment of benefits to the employes of such county and to the widows and children of such employes, except employes who are contributory to, participants in, or beneficiaries of a pension fund in operation in the state, or any municipal subdivision thereof. The funds of the retirement system shall be derived, administered and disbursed in accordance with the provisions of this act.

§ 1, ch. 201, Laws of 1937. In 1938, in accord with the Laws of 1937, Chapter 201, Milwaukee County created MCERS, which was then controlled by the State.

¶25 Laws promulgated in 1945, specifically Chapter 138 of the Laws of 1945, again addressed the State-controlled MCERS. Chapter 138 described retirement annuities and death benefits as being "benefit contracts." Those laws provided in relevant part:

> (2) CONTRACTS TO ASSURE BENEFITS. The benefits of members . . . and of beneficiaries of deceased members . . . shall be assured by benefit contracts as herein provided:

> (a) . . . [E]ach member and beneficiary having such a benefit contract shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by any other means without his consent.

Ch. 138, Laws of 1945.

¶26 Plaintiffs rely heavily on the legislative statement that in MCERS, members "shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by any other means without his consent." Their reliance is misplaced because the quoted legislative language of Chapter 138, Laws of 1945 set forth

14

above referred solely to pension and death benefits.  The cited legislative language could not have referred to health insurance because in 1945 Milwaukee County did not pay health insurance for its employees or for its retired employees.  Therefore, the "vested right" referred to by the legislature in (2)(a) above and relied on by plaintiffs referred only to pension and death benefits, which Milwaukee County then set out in Chapter 201 (1945).

¶27  In Chapter 405 of the Laws of 1965, the legislature granted Milwaukee County specific home rule authority over MCERS.  It provided in relevant part:

> (2) . . . Each county . . . is hereby empowered, by county ordinance, to make any changes in such retirement system which hereafter may be deemed necessary or desirable for the continued operation of such retirement system, but no such change shall operate to diminish or impair the annuities, benefits or other rights of any person who is a member of such retirement system prior to the effective date of any such change.

§ 2, ch. 405, Laws of 1965.

¶28 Plaintiffs rely on the restrictive legislative language, "no such change shall operate to diminish or impair the annuities, benefits or other rights of any person who is a member of such retirement system prior to the effective date of any such change."  Id.  They contend that although the home rule statute granted Milwaukee County authority to change benefits, Milwaukee County could not eliminate or reduce benefits subsequent to an employee's membership in MCERS because of the 1965 legislative restriction.

15

¶29 However, at the time of the home rule delegation, MCERS had nothing to do with health insurance. MCERS was contained solely within MCGO Chapter 201. The 1967 MCGO that set out Milwaukee County's rights and responsibilities under home rule powers of MCERS contains not one word about health insurance. MCGO ch. 201 (1967). Therefore, the statutory admonishment that plaintiffs contend prevented Milwaukee County from changing its employee health insurance actually had no application to health insurance. Stated otherwise, the home rule statute does not support plaintiffs' contention that the County violated a vested contract right when reimbursement of Medicare Part B premiums for retired employees was prospectively eliminated. Backing up just a bit in our chronologic consideration of ordinances will help further to explain why that is so.

¶30 Effective January 1, 1955, Milwaukee County first began to provide health insurance to employees. MCGO § 17.14(8) (1955). The provision of health insurance was not part of MCERS, which was enacted in 1938. In 1955, MCERS was still controlled by the State. However, Milwaukee County health insurance was an independent action by the County, not one controlled by the State, and it did not apply to retired employees as MCERS did. Stated otherwise, County health insurance was on a totally separate and independent track from MCERS. Health insurance was provided in MCGO Chapter 17, the "Classification and Salary Standardization Ordinance," not

16

through the "Milwaukee County Employees Retirement System" ordinance, MCGO Chapter 201.

¶31 Furthermore, as is apparent from the dates, in 1955, Milwaukee County independently began providing health insurance to its employees before the State granted Milwaukee County home rule powers over MCERS in 1965.   In addition, as the County points out in its brief, the home rule amendment was "passed years before the County had any retiree health insurance program."

¶32 The County's assertion is correct because it was not until 1967 that Milwaukee County first began including retired employees in its health insurance program.   MCGO § 17.14(7) (1967).   Milwaukee County explained that its 1967 ordinance was, "To repeal and recreate section 17.14(7) of the General Ordinances of Milwaukee County, as amended . . . relating to the Blue Cross-Medicare Programs so as to make such programs fully paid for both employes and persons on the retirement rolls."

¶33 Once again, the County's provision of health insurance was not part of MCERS, which was set out in MCGO Chapter 201. Health insurance, controlled by the County, was on a separate and independent track from pension and death benefits addressed in MCERS.   Stated otherwise, the State never controlled health insurance as it once controlled the pension and death benefits found in MCGO Chapter 201; therefore, the home rule amendment had no effect on whether the County could alter the terms under which it would reimburse working employees for Medicare Part B premiums when they retire.

17

¶34 Terms on which Milwaukee County has provided health insurance to its employees and retired employees have been modified many, many times since 1967.[14] As we earlier mentioned, plaintiffs rely heavily on the 1996 amendment to MCGO § 17.14(7)(h). We now consider that amendment.

¶35 The 1996 amendment to MCGO § 17.14(7)(h) provides: "The provisions of this subsection are considered a part of an employee's vested benefit contract as more fully set forth in 201.24(5.[10])." MCGO § 201.24(5.10) (1996) provides:

> Members who retire with sufficient pension service credit as noted in chapter 17 of the Code, or the appropriate labor agreement, shall be provided with paid health insurance as noted in chapter 17 of the Code, however such benefit shall not be funded via the pension fund.

¶36 We are unpersuaded that MCGO § 17.14(7)(h) (1996) accords plaintiffs a vested contract right requiring Milwaukee County to pay Medicare Part B premiums upon plaintiffs' retirement for a number of reasons.

¶37 First, although MCGO § 201.24(5.10) is part of MCERS, it does not cause health insurance to become part of MCERS as pension and death benefits are. Rather, § 201.24(5.10) confirms and maintains the separate tracks of MCERS and health insurance that they have always had. Section 201.24(5.10) plainly states that health insurance is controlled by MCGO Chapter 17. It explains that health insurance is "as noted in chapter 17 of the Code." Section 201.24(5.10) does not provide that health

---

[14] See, e.g., note 13.

18

insurance comes within the restrictions of MCERS, but rather it comes within the restrictions of "chapter 17 of the Code." In addition, § 201.24(5.10) affirms that Milwaukee County's funding of health insurance will not be an obligation of the MCERS pension fund, again separating the provision of health insurance from pension and death benefits accorded in MCERS.

¶38 Second, prior to amending MCGO § 17.14(7)(h) in 1996, the director of human resources for Milwaukee County summarized the proposed ordinance revisions in a memorandum provided to members of the personnel committee. The summary explained that the "revisions related to the provision of health insurance after retirement to retirees with 15 or more years of pension service credit is being proposed only to clarify the fact that the benefit is a vested benefit." (Emphasis added). Stated otherwise, the revision's reference to "an employee's vested benefit contract" related only to retired employees, because once employees retired with the requisite years of pension service credit, health insurance was a vested benefit for them.

¶39 Third, the County unilaterally offered to continue to reimburse retired employees for Medicare Part B premiums after they retire if they: (1) reached retirement age; (2) provided 15 or more years of credited county service; and (3) retired before the dates established by Milwaukee County in its offer. The plaintiffs did not convert this offer into a bilateral contract by accepting the County's terms.

¶40 To explain: When one party makes a promise to provide a benefit and only that party is subject to a legal obligation

19

arising from the promise, no bilateral contract is made. Paulson v. Olson Implement Co., 107 Wis. 2d 510, 517 n.6, 319 N.W.2d 855 (1982). A bilateral contract arises when the promisee accepts the offer by performing the acts requested by the promisor. Loth, 315 Wis. 2d 35, ¶28.

¶41 As we have explained, "the terms of an employer's unilateral offer are important in determining how an employee may accept the offer and give rise to a binding contract." Id., ¶31. Stated otherwise, upon an employer's conditional promise of a benefit, an employee becomes eligible for the benefit. The eligibility for the benefit vests as a contract right when the employee meets all the conditions the employer established to confer the benefit. Id., ¶47.

¶42 Plaintiffs had an opportunity to receive Medicare Part B reimbursement upon retirement, but they chose not to avail themselves of that opportunity. In this regard, we concur with the conclusion of the court of appeals that plaintiffs were required to take three steps in order to secure the opportunity of MCGO § 17.14(7)(dd): (1) reach retirement age; (2) provide 15 or more years of credited county service; and (3) retire before the dates established by Milwaukee County. Simply stated, plaintiffs were eligible for the benefit they seek; however, they chose not to satisfy the necessary conditions to cause the opportunity Milwaukee County provided to ripen into a vested contract right during the period of time the opportunity was available.

20

¶43 Our conclusion in this regard is consistent with our opinion in Loth, wherein we held that in order to receive the health insurance Loth sought, he had to reach retirement age, provide 15 years or more of credited City service, and retire. Id., ¶6.

¶44 Fourth, County payment for health insurance premiums is not defined in a fixed way such that a County payment is tied to a specified benefit that always will follow. For example, an employee could not understand that the dollar amount of County-paid premiums will accord the same benefits to employees, or retired employees, year after year. Rather, by their nature, health insurance benefits have always been fluid opportunities available for a limited period of time, which an employee may realize if he or she takes all actions necessary to convert the opportunity into an entitlement during the period in which it is available. Id. (explaining that Loth had to meet the conditions necessary to obtaining the health insurance plan he sought before the plan was amended). Accordingly, health insurance benefits and the premiums necessary to achieve them can be changed prospectively, as they have many, many times through the health insurance that Milwaukee County has offered to both employees and retirees since 1967.

¶45 Fifth, County health insurance payments are not earned in increments as employees continue their employment. Rather, the insurance provides opportunities that the County makes available for limited periods of time. Id.

21

¶46 Plaintiffs have attempted to distinguish Loth by arguing that entitlement to retiree reimbursement for Medicare Part B premiums vests immediately upon commencing employment in three primary ways: (1) applicability of session laws; (2) characterizing health insurance as a vested contract right that the County is not free to abrogate; and (3) offering alternative theories found in Rehrauer and Welter. We have addressed the effect of the session laws and the nature of the contractual opportunity for reimbursement of Medicare Part B premiums for retirees in regard to plaintiffs' claim. We now take up plaintiffs' remaining argument.

### C. Welter and Rehrauer

¶47 Plaintiffs argue that instead of Loth, Welter and Rehrauer control. The court of appeals declined to discuss or distinguish these cases, except to agree with the circuit court "that Loth appears at odds with both Welter . . . and Rehrauer, and that Loth discussed neither decision." Wis. Fed'n, 351 Wis. 2d 421, ¶11. Welter reasoned that statutory provisions that created duty disability pension rights for police officers vested those pension rights immediately upon an employee's membership in the City of Milwaukee's retirement system. Welter, 214 Wis. 2d at 488. Rehrauer concluded that the firefighters acquired vested duty disability pension rights that were contractually established during the course of their employment. Rehrauer, 246 Wis. 2d 863, ¶1.

¶48 In Welter, police officers eligible for duty disability pensions claimed that the applicable service

22

retirement allowance conversion age was the age that was in effect when they began employment. Welter, 214 Wis. 2d at 488. They argued that application of a lower conversion age, enacted by municipal ordinance after the officers began employment, was a breach of the vested contract right to the higher conversion age. Id. at 488. The court of appeals rejected the City's argument that an officer's right to a disability pension does not vest until he or she becomes disabled and agreed with the police officers. Id. at 494-95.

¶49 In Rehrauer, a contract in effect from 1972 to 1977 established lifetime duty disability pensions, allowing firefighters to avoid an eventual conversion to the lesser service retirement allowance. Rehrauer, 246 Wis. 2d 863, ¶¶2, 3 n.3. After that period, duty disability pensions were again converted to service retirement allowances. Id., ¶3 n.3. Firefighters hired before the 1972 contract period and beginning receipt of duty disability pension after 1977 claimed vested rights in the lifetime duty disability pension, which was the highest level of pension benefits contractually established at any time during the course of plaintiffs' active duty. Id., ¶¶2-3 n.3, 5, 7. The court of appeals held the firefighters gained "vested rights in subsequently-negotiated benefits, at the highest level contractually established at any time during the course of active duty." Id., ¶11.

¶50 Before us, plaintiffs characterize Welter and Rehrauer as directly supporting the immediate vesting of rights to health insurance terms and conditions upon hiring, asserting that they

23

involved bilateral contracts founded on statutory language substantially identical to chs. 138 and 405 that plaintiffs claim is applicable here. Although we could draw many distinctions between plaintiffs' claims and those presented in Welter and Rehrauer, it is sufficient to say, as the County has argued, that both Welter and Rehrauer are pension cases, rather than health insurance cases and the rights asserted in Welter and Rehrauer arose from the City of Milwaukee's pension plan, not a Milwaukee County health insurance plan. Stated otherwise, neither Welter nor Rehrauer involves health insurance, the nature of which as we have explained, is a fluid opportunity for a limited period of time.

¶51 Health insurance, found in MCGO § 17.14 is on a separate and independent track from pension rights established in MCERS. As we have detailed above, the laws relied on by plaintiffs that arguably could be applicable to MCERS do not apply to or affect Milwaukee County's provision of health insurance.

### III. CONCLUSION

¶52 We conclude that Milwaukee County did not abrogate a vested contract right when it prospectively modified a health insurance benefit it offered for employees who had not yet retired. We further conclude that County employees have a vested contract right to Medicare Part B premium reimbursement when they fulfill all three criteria for its payment: (1) reaching retirement age; (2) providing 15 or more years of credited county service; and (3) retiring before the dates

established by Milwaukee County.  Employees who did not meet all three criteria have not fulfilled the requirements necessary to establish a vested contract right to reimbursement.  Therefore, we affirm the decision of the court of appeals that granted summary judgment to Milwaukee County.

*By the Court.*—The decision of the court of appeals is affirmed and the cause remanded to the circuit court to dismiss the complaint.

¶53 DAVID T. PROSSER, J. *(concurring)*. This case is more difficult than Loth v. City of Milwaukee, 2008 WI 129, 315 Wis. 2d 35, 758 N.W.2d 766, and Stoker v. Milwaukee County, 2014 WI 130, ___ Wis. 2d ___, 857 N.W.2d 102. Because the result here appears to be unfair, I have attempted to find some reasonable ground to distinguish this case from Loth and Stoker in order to preserve a right——at least for some county employees——to receive the promised benefit of Medicare Part B premium reimbursement sometime in the future.

¶54 This good faith effort has failed. Without resort to the surrounding statutes and ordinances, this case is governed by Loth. Turning to those statutes and ordinances, there is a disconnect between the language of the statutes and ordinances and the reality of the situation. It is not possible to conclude that county employees like Schwegel and Jaskulski have vested rights to Medicare Part B premium reimbursement before they retire——indeed from the time they were hired——without gravely impairing a county government's ability to manage its fiscal affairs.

¶55 In 1945 the legislature approved Chapter 138, Laws of 1945. The statement of LEGISLATIVE POLICY in the act reads as follows:

> Employes have been attracted to and have remained in the public service in counties of more than 500,000 population despite the prevailing higher wages in other employments because of the deferred compensation for their services promised to them in the form of retirement annuities and death benefits in the retirement system to which they have been admitted as contributing members. The purpose of this act is to strengthen the public service in the most populous

1

counties of the state by establishing the security of such retirement and death benefits.

¶56 Some of the premises in this statement of policy are no longer accurate. Prevailing wages in other employments are not always higher than in county service. Public employee benefits are no longer limited to retirement and death benefits and may reach very substantial amounts. Some more modern benefits, like those in question here, might be obtained only after 15 or more years of service. Thus, the protections outlined in 1945 may not square with the reality of contemporary benefits, as those protections do not fully contemplate modern benefit innovations. As a result, the legislature's policy of providing security to public employee benefits——declared some seven decades ago——appears to have been greatly complicated and undermined by modern developments.

¶57 What is so frustrating today is that there appears to be no middle ground for courts between jeopardizing the public fisc by expansive, unreasonable interpretations of outdated statutes and permitting counties to break faith with many public employees by relying strictly upon technical rules.

¶58 Years ago, Congress passed the Employee Retirement Income Security Act (ERISA) to protect private employees who participate in pension plans. Something similar may be necessary in Wisconsin so that we can step back from the immediacy of the fiscal crises faced by public employers and develop a strategy to protect public finances without betraying the trust owed to loyal public employees.

¶59 For the foregoing reasons, I respectfully concur.

2

¶60 SHIRLEY S. ABRAHAMSON, C.J. *(dissenting).* When the plaintiffs in the present case began their employment with Milwaukee County, they became members of the Milwaukee County Employees' Retirement System (MCERS).[1] MCERS is governed by Chapter 201 of the Milwaukee County General Ordinances (MCGO).

¶61 The language of the state session laws and the Milwaukee County ordinances governing MCERS assures that County employees' right to receive MCERS benefits becomes vested when the employees are hired. "Vested" means the County cannot renege on its promises.

¶62 Since at least 1989, MCGO § 17.14(7)(c) has provided certain employees with no-premium-cost coverage under Medicare Part B when they retire.[2]

¶63 In 1996, MCGO § 17.14(7)(h) was amended to provide explicitly that "[t]he provisions of this subsection are considered a part of an employee's vested benefit contract as more fully set forth in 201.25(5.91) [sic]."[3] Section 201.25 is part of MCGO ch. 201, which governs MCERS.

---

[1] See § 2(c), ch. 138, Laws of 1945.

[2] The majority opinion explains that provisions in MCGO § 17.14(7) have been renumbered since 1989. For ease of reading, I refer to the numbering used at the time the relevant provisions were adopted.

[3] As the majority opinion notes, the reference in MCGO § 17.14(7) to MCGO § 201.24(5.91) appears to be a drafting error. See majority op., ¶10 n.9. There is no MCGO § 201.24(5.91). The reference in MCGO § 17.14(7) should be to MCGO § 201.24(5.10).

¶64 The "vested benefit contract" referred to in MCGO § 17.14(7)(h) is the MCERS benefit contract that Milwaukee County enters with its employees at the time of their initial hire.

¶65 In 2011, the County changed its position and amended MCGO § 17.14(7) to provide that certain categories of Milwaukee County employees (including the plaintiffs[4]) will be ineligible for reimbursement of their post-retirement Medicare Part B premiums upon their retirement in or after 2011 or 2012.

¶66 The instant case revolves around the parties' dispute about the effect and validity of the 2011 amendment. The issue presented is whether County employees who began working for the County after it agreed to reimburse employees for their post-retirement Medicare Part B premiums and before it changed its position have the right to reimbursement of their post-retirement Medicare Part B premiums. The circuit court decided that they do. I agree.

¶67 The majority opinion rules that the County need not keep its promise to employees.

¶68 Justice David T. Prosser concurs in the majority opinion, stating that a determination that the plaintiffs have a vested right to reimbursement of their post-retirement Medicare

---

MCGO § 201.24(5.10) provides: "Members who retire with sufficient pension service as noted in chapter 17 of the Code, or the appropriate labor agreement, shall be provided with paid health insurance as noted in chapter 17 of the Code, however such benefit shall not be funded via the pension fund."

[4] The plaintiffs were hired by Milwaukee County in 1989 and 1990.

2

Part B premiums would "gravely impair[] a county government's ability to manage its fiscal affairs."[5]

¶69 For the County (or anyone) to pay expenses, including employee benefits, is burdensome. But despite Justice Prosser's opining without any financial data that upholding the plaintiffs' vested right to the benefits at issue in the instant case would gravely impair Milwaukee County's ability to manage its finances, the fact is that Milwaukee County does not defend the disputed 2011 amendment to MCGO § 17.14(7) on the grounds of "public economic emergency,"[6] "great public calamity,"[7] "extraordinary conditions,"[8] or "urgent public need."[9] The instant case therefore differs from Home Bldg. & Loan Ass'n v. Blaisdell, 290 U.S. 398, 420 (1934), in which the United States Supreme Court upheld a Minnesota statute that allowed for the

---

[5] Concurrence, ¶54.

[6] See Home Bldg. & Loan Ass'n v. Blaisdell, 290 U.S. 398, 420 (1934).

[7] See id. at 439.

[8] See id.

[9] See id. at 440.

3

retroactive impairment of mortgage contracts due to "public economic emergency."[10]

¶70 Milwaukee County does not rely on a Blaisdell defense. Rather, Milwaukee County defends the 2011 amendment on the grounds that the benefits it affects were not vested. The majority opinion errs in accepting this argument. It undermines the state legislature's recognition of the hardship imposed on County employees unless the employees can make retirement plans with certainty about the retirement benefits they will receive from the County. To give employees certainty and to avoid imposing unnecessary hardship on them are the reasons the state legislature vested County employees' retirement benefits in the first place. See § 1, ch. 138, Laws of 1945 ("The purpose of this act is to strengthen the public service by establishing the security of such retirement and death benefits" (emphasis added)).

---

[10] The Blaisdell Court determined that while the Contract Clause of the federal constitution generally prohibits states from enacting laws that retroactively impair contracts, "the prohibition is not an absolute one." Blaisdell, 290 U.S. at 428. The Court declared that the police power indisputably enables states to interfere with contracts when such interference is "made necessary by a great public calamity such as fire, flood, or earthquake." Blaisdell, 290 U.S. at 439 (emphasis added). The Court further declared that "[t]he reservation of state power appropriate to such extraordinary conditions" is necessarily "a part of all contracts." Blaisdell, 290 U.S. at 439 (emphasis added). Finally, the Court concluded that "if state power exists to give temporary relief from the enforcement of contracts in the presence of [natural] disasters . . . [then] that power cannot be said to be nonexistent when the urgent public need demanding such relief is produced by [] economic causes." Blaisdell, 290 U.S. at 439-40 (emphasis added).

4

¶71 The majority opinion is wrong on the law in three primary respects.

¶72 First, instead of focusing on the state session laws and the Milwaukee County ordinances that govern the benefits provided by the County's retirement system (including reimbursement for retirees' Medicare Part B premiums), the majority opinion digresses and emphasizes an unsupported distinction between health benefits and other forms of retirement benefits.

¶73 The majority opines that the County's retirement system and its system of providing health benefits are on two completely separate tracks.[11] The majority comes to this sweeping but unconvincing conclusion without any support in the governing state session laws, Milwaukee County ordinances, or cases (and ignoring contrary language within them) and without the benefit of adversarial briefs or argument. Milwaukee County's argument in the instant case centers on a trilogy of cases described in Part III of this opinion.

¶74 Try as it might, the majority opinion is not credible in its attempt at separating reimbursement of Medicare Part B premiums from the other benefits provided by MCERS or in its attempt at circumventing the text of the governing state session laws and Milwaukee County ordinances.

¶75 Second, the majority opinion disregards the clear language of the governing state session laws and Milwaukee

---

[11] See majority op., ¶¶23-37, 44, 45.

County ordinances. The text of these laws and ordinances is dispositive of the instant case.

¶76 The language of the state session laws makes it abundantly clear that upon becoming County employees, the plaintiffs gained a vested right to the annuities and "all other benefits" provided by MCERS.[12] This broad language does not exclude reimbursement of post-retirement Medicare Part B premiums. The Milwaukee County ordinances incorporated reimbursement of post-retirement Medicare Part B premiums into MCERS.

¶77 The state session laws and the Milwaukee County ordinances say what they mean and mean what they say. They explicitly grant the plaintiffs a vested right at the commencement of their employment to reimbursement at retirement of their Medicare Part B premiums.

¶78 Third, the majority opinion fails to reconcile three decisions regarding the vesting of employee benefits that the circuit court and the court of appeals found confusing and inconsistent: Welter v. City of Milwaukee, 214 Wis. 2d 485, 571 N.W.2d 459 (Ct. App. 1997); Rehrauer v. City of Milwaukee, 2001 WI App 151, 246 Wis. 2d 863, 631 N.W.2d 644; and Loth v. City of Milwaukee, 2008 WI 129, 315 Wis. 2d 35, 758 N.W.2d 766.[13]

---

[12] § 2(c), ch. 138, Laws of 1945.

[13] While the majority opinion focuses on distinguishing health insurance from pension and death benefits (tackling Loth v. City of Milwaukee, 2008 WI 129, 315 Wis. 2d 35, 758 N.W.2d 766, as a mere afterthought), the County's brief focuses primarily on these three employee benefit cases.

6

¶79 A careful reading of the three cases demonstrates that each turns on the language of the provisions governing the particular employee benefits at issue and that the provisions in Loth are significantly different from the provisions in Welter, Rehrauer, and the instant case.

¶80 The language of the laws and ordinances protecting reimbursement of the plaintiffs' post-retirement Medicare Part B premiums from diminishment by the County in the instant case is substantially the same as the language of the state session law protecting the employees' disability benefits from diminishment by the City in Welter and Rehrauer. The disability benefits in Welter and Rehrauer were part of the City of Milwaukee's retirement system and were governed by a state session law and City enactments, just as reimbursement of Medicare Part B premiums in the instant case is part of the County's retirement system and is governed by state session laws and County enactments.

¶81 In contrast, the language of the City of Milwaukee enactment governing the employee health benefits at issue in Loth is entirely different. In Loth, the health benefits at issue were not governed by state session laws and were not part of the City's retirement system; the City enactment at issue in Loth made no reference to the City's retirement system or to the vesting of benefits.

¶82 Thus, the Loth opinion and the Loth briefs do not cite Welter or Rehrauer because the provisions governing the benefits at issue in Loth were significantly different from the

7

provisions governing the benefits at issue in <u>Welter</u> and <u>Rehrauer</u>.

¶83 The state session law at issue in <u>Welter</u> and <u>Rehrauer</u> (governing the City's retirement system) is substantially the same as the state session laws governing Milwaukee County's retirement system in the instant case. Both <u>Welter</u> and <u>Rehrauer</u>, relying on the language of the governing state session law, held that the City police officers and firefighters had a vested right to the disability benefits at issue that could not be diminished by city enactment. <u>Welter</u> and <u>Rehrauer</u> govern the instant case; <u>Loth</u> does not.

¶84 By declaring that it will not reimburse the post-retirement Medicare Part B premiums of future retirees, the County has, in my opinion, breached the plaintiffs' vested benefit contracts in violation of state session laws, Milwaukee County ordinances, and case law precedent.

¶85 Accordingly, I dissent.

I

¶86 To reach its desired result, the majority opinion has concocted an unsupported distinction between health benefits and other forms of retirement benefits provided by MCERS. It raises this alleged distinction <u>sua sponte</u> and addresses it without the benefit of briefs or argument by the parties. It cites no authority in the governing state session laws, Milwaukee County ordinances, or case law to support its position, and it overlooks language in the governing state session laws, the Milwaukee County ordinances, and the cases that contradicts its

8

position.  Finally, it speaks in overly broad terms that are likely to have unanticipated consequences.

¶87  The majority opinion raises, analyzes, and adopts this "discreteness" theory sua sponte, without giving the parties an opportunity to participate in the discussion.  When a court raises an issue sua sponte, "fairness requires that the parties have the opportunity to develop the relevant facts and to present legal arguments on the issue."[14]  The majority apparently sees no reason to provide such an opportunity in the instant case.

¶88  Thus, once again, I write to decry the court's failure to give counsel the opportunity to represent their clients before this court.  The majority's position shows disrespect for the litigants and counsel.

¶89  I recognize that some justices prefer to reach decisions without the benefit of arguments or briefs by the parties and apparently perceive that the rule of law is advanced by the court's sua sponte approach.  I do not.  I prefer greater restraint by the court and greater respect for litigants and their counsel.  As I have stated in the past:

> [T]he rule of law is generally best developed when matters are tested by the fire of adversarial briefs and oral argument.
>
> . . . .
>
> Indeed, a court's sua sponte determination of an issue may raise due process considerations: A court may

---

[14] Hydrite Chem. Co. v. Aetna Cas. & Sur. Co., 220 Wis. 2d 26, 49, 582 N.W.2d 423 (Ct. App. 1998) (Roggensack, J., dissenting).

be depriving parties of their right to a meaningful appeal, to due process notice, and to adversary counsel.[15]

¶90 I agree with Justice Ann Walsh Bradley that this court's role is to weigh the arguments of counsel, not to make arguments as counsel:

> By raising sua sponte a brand new outcome-determinative issue, an appellate court tends to blur the lines between the role of the lawyer as advocate and the role of the judge as impartial decision maker. In contrast to the other branches of government, the judicial branch's role seems better fitted to respond to issues presented rather than creating issues to present.[16]

_____

[15] _Maurin v. Hall_, 2004 WI 100, ¶¶119-121, 274 Wis. 2d 28, 682 N.W.2d 866 (Abrahamson, C.J. & Crooks, J., concurring), overruled on other grounds by _Bartholomew v. Wis. Patients Comp. Fund_, 2006 WI 91, 293 Wis. 2d 38, 717 N.W.2d 216. In _Maurin_, Justice Crooks and I criticized the majority opinion for deciding the case on the basis of a "novel interpretation of the statutes" without first requesting supplemental briefs or reargument. _Maurin_, 274 Wis. 2d 28, ¶120 (Abrahamson, C.J., & Crooks, J., concurring). Our concurrence stated: "We are at a loss to understand why the majority refuses to call for additional briefs." _Maurin_, 274 Wis. 2d 28, ¶121 (Abrahamson, C.J., & Crooks, J., concurring).

[16] _Attorney's Title Guar. Fund, Inc. v. Town Bank_, 2014 WI 63, ¶56, 355 Wis. 2d 229, 850 N.W.2d 28 (Bradley, J., dissenting).

See also _Bartus v. DHSS_, 176 Wis. 2d 1063, 1073, 501 N.W.2d 419 (1993) ("We therefore urge the courts to exercise caution when determining an issue sua sponte without the assistance of supplemental briefs and to ask for briefs unless the matter is quite clear."); _Cemetery Servs., Inc. v. Wis. Dep't of Regulation & Licensing_, 221 Wis. 2d 817, 831, 586 N.W.2d 191 (Ct. App. 1998) ("We cannot serve as both advocate and court. For this reason, we generally choose not to decide issues that are not adequately developed by the parties in their briefs."). Accord _Day v. McDonough_, 547 U.S. 198, 210 (2006) ("Of course, before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions.").

¶91 The majority opinion's <u>sua sponte</u> approach is especially galling considering the lack of support for the distinction the majority opinion draws within MCERS between health insurance and pension and death benefits.

¶92 The infirmity of the majority opinion's distinction is readily apparent in the many gratuitous, hollow-sounding comments it offers without any citation or explanation of their relevance to the parties' dispute. <u>See, e.g.</u>, majority op., ¶44 ("County payment for health insurance premiums is not defined in a fixed way such that a County payment is tied to a specified benefit that always will follow. . . . [B]y their nature, health insurance benefits have always been fluid opportunities available for a limited period of time . . . ."); majority op., ¶45 ("[H]ealth insurance payments are not earned in increments . . . ."); majority op., ¶50 ("[P]ension cases [differ from cases involving] health insurance, the nature of which . . . is a fluid opportunity for a limited period of time.").

¶93 The majority opinion's detour from the parties' arguments distorts the text of the 1996 amendment to MCGO § 17.14(7)(h) and the language of § 2, ch. 138, Laws of 1945, one of the state session laws governing the County's retirement system.

¶94 The 1996 amendment contradicts the majority opinion's assertion that health insurance for Milwaukee County employees

has been "on a separate and independent track from pension and death benefits . . . ."[17]

¶95 Both before and after the 1996 amendment, MCGO § 17.14(7)(h) provided that the "County shall pay the full monthly cost of providing such coverage to retired members of the County Retirement System with 15 or more years of creditable pension service as a County employee . . . ."

¶96 The text added to MCGO § 17.14(7)(h) by the 1996 amendment, which remains in the current version of the ordinance, reads as follows: "The provisions of this subsection are considered a part of an employee's vested benefit contract as more fully set forth in 201.24(5.91) [sic]."[18]

¶97 The "vested benefit contract" to which the 1996 amendment refers is the vested benefit contract the County must enter with each employee when the employee is hired. See § 2, ch. 138, Laws of 1945. These contracts assure County employees a vested right to all benefits provided by MCERS at the employees' time of hire, rather than at the time of the employees' retirement.[19]

¶98 Thus, the 1996 amendment expressly puts health insurance and pension and death benefits on the same track by explicitly stating that the health insurance provided by MCGO § 17.14(7) is part of the "vested benefit contract" MCERS members enter at the commencement of their employment with the

---

[17] Majority op., ¶33.

[18] MCGO § 17.14(7)(h) (1996) (emphasis added).

[19] § 2(c), ch. 138, Laws of 1945.

County.[20]  MCGO § 17.14(7)(h) affirms that the particular health benefit at issue in the instant case comes within the restrictions of MCERS.  The majority opinion's conclusion at ¶37 that the 1996 amendment means that health insurance is part of MCERS but not subject to the restrictions imposed on MCERS is specious.

¶99 The director of human resources' summary of the 1996 amendment (cited in ¶38 of the majority opinion to support its position) states:

> The revisions related to the provisions of health insurance after retirement to retirees with 15 or more years of pension service credit is being proposed only to clarify the fact that the benefit is a vested benefit.

¶100 The majority opinion emphasizes the word "retirees" and misinterprets the sentence to give employees vested rights to the health benefits at issue only at retirement.  Read rationally in the context of MCGO § 17.14(7)(h) and in the broader context of MCERS, the 1996 amendment and the director's comment can mean only one thing for the plaintiffs: They gained a vested right to reimbursement of their post-retirement Medicare Part B premiums when they began their employment; to take advantage of this benefit, they must meet the enumerated prerequisites at retirement.

¶101 The majority opinion also garbles the language of § 2(c), ch. 138, Laws of 1945.  This state session law, which governs MCERS, explicitly states that future MCERS members

---

[20] MCGO § 17.14(7)(h) (1996).

"shall have a . . . <u>vested right</u> in the annuities <u>and all other</u> <u>benefits</u> . . . as provided in the law under which [MCERS] was established <u>as such law shall have been amended and be in effect</u> <u>at the date of commencement of his [or her] membership</u>."[21]

¶102 The broad and inclusive reference in Chapter 138, Laws of 1945, to "all other benefits" and the broad language in Chapter 138 acknowledging that the benefits provided by MCERS will change over time demonstrate clearly that the benefits provided by MCERS can include newly adopted health benefits. The majority opinion's contrary conclusion at ¶26 is unsupported by the governing state session laws.[22]

¶103 In 2011, MCGO § 17.14(7) was again amended. The instant case revolves around the parties' dispute about the effect and validity of this 2011 amendment. The 2011 amendment states, among other things, that certain categories of County employees (including the plaintiffs) will be ineligible for reimbursement of their post-retirement Medicare Part B premiums upon their retirement in or after 2011 or 2012.

¶104 The majority opinion upholds the 2011 amendment without a convincing analysis of the applicable state session laws and the Milwaukee County ordinances protecting the plaintiffs.

---

[21] § 2(c), ch. 138, Laws of 1945 (emphasis added).

[22] <u>See also</u> ch. 405, Laws of 1965, granting Milwaukee County home rule and empowering it to make changes to the retirement system "by county ordinance" so long as no change "diminish[es] or impair[s] the annuities, benefits or other rights of any person who is a member of such retirement system prior to the effective date of such change."

14

¶105 Finally, reimbursement of qualified retirees' Medicare Part B premiums is not the only health benefit granted by Milwaukee County to retirees. The majority opinion is broadly written. Such a broad opinion is apt to have unanticipated ramifications.

¶106 In sum, the majority opinion's attempt at distinguishing health benefits at retirement from other kinds of benefits at retirement falls flat. The majority opinion's failure to give the parties an opportunity to address this alleged distinction, the lack of support for its position in the governing state session laws and Milwaukee County ordinances, its failure to acknowledge contradictory language in those laws and ordinances, and its sweeping characterization of health insurance as separate and distinct from MCERS render the majority opinion wholly unconvincing.

II

¶107 The majority opinion's disregard for the clear language of the governing state session laws and Milwaukee County ordinances extends beyond its discussion of the supposedly inherent difference between health insurance and pension and death benefits. The laws and ordinances governing reimbursement for retired County employees' Medicare Part B premiums are in fact dispositive of the instant case.

¶108 The governing state session laws and the Milwaukee County ordinances make it abundantly clear that upon joining the County's retirement system, the plaintiffs gained a vested right to reimbursement of their post-retirement Medicare Part B

15

premiums. Further, under the clear language of the laws and ordinances, Milwaukee County may change MCERS so long as no change diminishes or impairs the vested rights of MCERS members.

¶109 The 2011 Milwaukee County ordinance amendment at issue in the instant case states, among other things, that certain categories of County employees (including the plaintiffs) will be ineligible for reimbursement of their post-retirement Medicare Part B premiums upon their retirement in or after 2011 or 2012. The 2011 amendment diminishes or impairs the vested rights of then active MCERS members (including the plaintiffs) and is therefore invalid as applied to them.

¶110 The texts of the governing state session laws and Milwaukee County ordinances are dispositive. I first summarize the state session laws and Milwaukee County ordinances in chronological order and then discuss them more fully. The Milwaukee County ordinances govern MCERS and have made reimbursement of Medicare Part B premiums part of MCERS (see E, below), but the ordinances must comport with the state session laws dating back to 1937 that protect Milwaukee County employees' vested contract rights (see A-D, below).

    A. Chapter 201, Laws of 1937, required Milwaukee County to develop a retirement system for its employees. Pursuant to this law, Milwaukee County created MCERS.[23]

---

[23] Stoker v. Milwaukee Cnty., 2014 WI 130, ¶5, ___ Wis. 2d ___, 857 N.W.2d 102.

16

B.  Chapter 138, Laws of 1945, declared that the legislative policy underlying MCERS is to recruit and retain County employees by establishing the security of their retirement and death benefits.[24]  "[T]he legislature required employee benefits under MCERS to 'be assured by benefit contracts.'"[25]  Chapter 138 also provided that at the commencement of their employment with the County, County employees become members of MCERS and have a "vested right in the annuities <u>and all other benefits</u> . . . [provided by] the law under which [MCERS] was established as such law shall have been amended and be in effect at the date of commencement of [their] membership [in MCERS]."[26]

C.  Chapter 326, Laws of 1957, provided that "a member of MCERS has a 'vested right . . . to all increases in benefits covered by amendments subsequent to the date his [or her] membership [in MCERS] is effective.'"[27]

D.  Chapter 405, Laws of 1965, granted "home rule" authority to Milwaukee County over MCERS and provided that "the future operation of each [county] benefit fund is a matter of local affair and

---

[24]  See id., ¶5 n.7.

[25]  Id., ¶5 (quoting and citing ch. 138, Laws of 1945).

[26]  Id. (quoting and citing ch. 138, Laws of 1945).

[27]  Id., ¶6 (quoting and citing § 6, ch. 326, Laws of 1957).

17

government . . . ." It also "empowered Milwaukee County 'to make any changes in [its employee] benefit fund which hereafter may be deemed necessary or desirable for the continued operation of [MCERS]," but limited the County's authority by providing that "no such change shall operate to diminish or impair the annuities, benefits or other rights of any person who is a member of [MCERS] prior to the effective date of any such change."[28]

E. MCERS is also governed by Milwaukee County ordinances. As I discussed previously, the 1996 amendment to MCGO § 17.14(7)(h) incorporated reimbursement of the premium costs of Medicare Part B into MCERS by clarifying that such health benefits are "part of an employee's vested benefit contract." As part of MCERS, the benefits provided by MCGO § 17.14(7)(c) and (h) are subject to the vesting provision in Chapter 138, Laws of 1945; Chapter 326, Laws of 1957; and the home rule limiting provision in Chapter 405, Laws of 1965.

A

¶111 Chapter 201, Laws of 1937, required Milwaukee County to develop a retirement system for its employees for payment of benefits. Pursuant to this law, Milwaukee County created the Milwaukee County Employees' Retirement System (MCERS).[29]

---

[28] Id., ¶7 (quoting and citing § 6, ch. 405, Laws of 1965).

[29] See id., ¶5.

18

B

¶112 I turn to the vesting provisions in Chapter 138, Laws of 1945. This state session law provides that Milwaukee County employees become members of MCERS at the commencement of their employment with the County and gain a vested right at that time in "the annuities and all other benefits . . . as provided in the law under which [MCERS] was established as such law shall have been amended and be in effect at the date of commencement of [their] membership [in MCERS]."[30]

¶113 The most important aspects of Chapter 138, Laws of 1945, for the instant case are its use of the phrase "vested rights" and its recognition that MCERS will change over time with future benefits inuring to employees.

¶114 The phrase "vested rights" has a common usage in the law; it is a technical legal phrase. Under the general rules of statutory interpretation adopted by the legislature, the phrase is interpreted in conformance with its common usage (here, in

---

The relevant text of Chapter 201 is as follows:

> In each county having a population of five hundred thousand or more a retirement system shall be established and maintained for the payment of benefits to the employes of such county and to the widows and children of such employes . . . . The funds of the retirement system shall be derived, administered and disbursed in accordance with the provisions of this act.

[30] Stoker, ___ Wis. 2d ___, ¶5 (quoting and citing ch. 138, Laws of 1945). See also id., ¶22.

19

the law) and is given its technical legal meaning.[31] The majority opinion offers a legal meaning, stating that "[a] vested contractual right is one that cannot be abrogated without breaching the contract from which it arises."[32] The majority opinion fails, however, to apply the definition it provides.

¶115 Despite the clear language in Chapter 138 providing the plaintiffs with a vested right to the benefits provided by MCERS at the commencement of their employment, the majority opinion concludes that the plaintiffs' right to reimbursement of their post-retirement Medicare Part B premiums never vested.

¶116 The relevant text of Chapter 138, Laws of 1945, is as follows (emphasis added):

> (2) CONTRACTS TO ASSURE BENEFITS. The benefits of members, whether employes in service or retired as beneficiaries, and of beneficiaries of deceased members in the retirement system created by ch. 201, Laws of 1937, as amended, shall be assured by benefit contracts as herein provided:

---

[31] **See Wis. Stat. § 990.01(1) (2011-12) (**"All words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning."). All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated. See also Volvo Trucks N. Am. v. DOT, 2010 WI 15, ¶36, 323 Wis. 2d 294, 779 N.W.2d 423 ("Technical words or phrases in a statute should be given their technical or specialized meaning.").

[32] See majority op., ¶3, n.5. According to Black's Law Dictionary, a vested right is also one that is "complete and consummated, and of such character that it cannot be divested without the consent of the person to whom it belongs." Black's Law Dictionary 1564 (6th ed. 1990). The 1999 edition of Black's Law Dictionary defines vested as "a completed, consummated right for present or future enjoyment; not contingent, unconditional; absolute."

(a) . . . The annuities and all other benefits . . . shall be obligations of such benefit contract on the part of the county . . . and each member and beneficiary having such a benefit contract shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by any other means without his [or her] consent.

. . . .

(c) Every future entrant who shall become a member of this retirement system after the effective date of this act shall have a similar benefit contract and vested right in the annuities and all other benefits . . . as provided in the law under which the retirement system was established as such law shall have been amended and be in effect at the date of commencement of his [or her] membership.

C

¶117 In 1957, the legislature again affirmed Milwaukee County employees' vested right to MCERS benefits. Chapter 326, Laws of 1957, provides that a member of MCERS has a "vested right . . . to all increases in benefits covered by amendments subsequent to the date his [or her] membership [in MCERS] is effective."[33]

D

¶118 Chapter 405, Laws of 1965, grants "home rule" authority to Milwaukee County over MCERS and empowers Milwaukee County "to make any changes [by county ordinances] in [its employee] benefit fund which hereafter may be deemed necessary or desirable for the continued operation of [MCERS]." Chapter 405 of the 1965 Laws limits this grant of home rule authority by

---

[33] Stoker, ___ Wis. 2d ___, ¶6 (quoting and citing § 6, ch. 326, Laws of 1957). See also id., ¶22.

21

providing that "no such change shall operate to diminish or impair the annuities, benefits or other rights of any person who is a member of [MCERS] prior to the effective date of any such change."[34]

¶119 In other words, Milwaukee County has authority to reduce the benefits provided to <u>future</u> employees but not to reduce the vested benefits of persons in the County's employ prior to the effective date of the reduction. This court held in <u>Stoker v. Milwaukee County</u>, 2014 WI 130, ___ Wis. 2d ___, 857 N.W.2d 102, that the limit on Milwaukee County's home rule authority allows it to reduce a benefit that has not vested but does not allow the County to reduce a benefit that has vested.[35]

¶120 The relevant text of Chapter 405, Laws of 1965, is as follows:

> Each county which is required to establish and maintain a benefit fund pursuant to this act is hereby <u>empowered by county ordinance, to make any changes</u> in such benefit fund which hereafter may be deemed necessary or desirable for the continued operation of such benefit fund, but <u>no such change shall operate to diminish or impair the annuities, benefits or other rights of any person who is a member of such benefit fund</u> prior to the effective date of any such change.[36]

E

---

[34] <u>Stoker</u>, ___ Wis. 2d ___, ¶7 (quoting and citing § 6, ch. 405, Laws of 1965). <u>See also</u> <u>id.</u>, ¶22.

[35] <u>Id.</u>, ¶¶24, 25, 27, 28, 29.

[36] § 1, ch. 405, Laws of 1965 (emphasis added).

¶121 In addition to the aforementioned state session laws, Milwaukee County ordinances govern MCERS.[37]

¶122 The significant ordinance is MCGO § 17.14(7). As I explained previously, in 1996, MCGO § 17.14(7)(h) was amended to clarify that the health benefits provided by subsection (7) (including MCGO § 17.14(7)(c) governing reimbursement of post-retirement Medicare Part B premiums) are part of the "vested benefit contract" MCERS members enter upon commencing their employment with the County, "as more fully set forth in 201.25(5.91) [sic]."

¶123 In sum, the laws and ordinances at issue in the present case could not be clearer: The plaintiffs' right to reimbursement of their post-retirement Medicare Part B premiums vested at the commencement of their employment with the County. Chapter 138, Laws of 1945, and Chapter 405, Laws of 1965, prohibit Milwaukee County from diminishing or impairing vested rights. Yet the 2011 amendment to MCGO § 17.14(7) does just that. Consequently, the 2011 amendment breached the plaintiffs' vested benefit contracts, violated the governing laws and ordinances, and is invalid.

¶124 As in Stoker, the majority opinion in the instant case is able to reach its conclusion that no breach of contract or violation of law exists only "by repeatedly ignoring the language of the governing session laws."[38]

---

[37] See Stoker, ___ Wis. 2d ___, ¶¶8, 10, 11, 12 (discussing Milwaukee County ordinances relating to MCERS).

[38] Stoker, ___ Wis. 2d ___, ¶48 (Bradley, J., dissenting).

23

III

¶125 The third significant legal error in the majority opinion is its failure to reconcile three precedential opinions regarding the vesting of employee benefits. The circuit court and the court of appeals characterized the following three opinions as confusing and inconsistent: Loth v. City of Milwaukee, 2008 WI 129, 315 Wis. 2d 35, 758 N.W.2d 766; Welter v. City of Milwaukee, 214 Wis. 2d 485, 571 N.W.2d 459 (Ct. App. 1997); and Rehrauer v. City of Milwaukee, 2001 WI App 151, 246 Wis. 2d 863, 631 N.W.2d 644.

¶126 The County's position and argument in this court revolve around these three cases.

¶127 A careful examination of this trilogy demonstrates that the three opinions are consistent with each other, support the position I espouse, and govern the instant case.

¶128 The majority opinion claims it is following Loth, but it is in fact inconsistent with Loth. The majority opinion is also inconsistent with Welter and Rehrauer. The majority opinion in the instant case errs when it concludes that the plaintiffs' rights under MCGO § 17.14(7) do not vest until the plaintiffs reach retirement age, provide 15 years or more of credited County service, and retire.[39]

¶129 I begin by examining Loth, the only case the majority views as controlling. Loth is instructive and supports my position.

---

[39] See majority op., ¶¶42-43.

¶130 Loth turns on the language of a City of Milwaukee resolution that governs the particular employee health benefits at issue in that case. Loth correctly insists that "the terms of an employer's . . . offer are important in determining how an employee may accept the offer and give rise to a binding contract."[40]

¶131 In Loth, a city resolution extended paid retiree health insurance coverage to employees who fulfilled enumerated prerequisites. The City never incorporated its retiree health insurance program into vested benefit contracts or otherwise indicated at any time or in any other way during Loth's employment that he had a contractual (let alone vested) right to paid retiree health insurance before he fulfilled the prerequisites set forth in the resolution.

¶132 The Loth court interpreted the City resolution as dictating that the City's offer of paid retiree health insurance could be accepted only by an employee's retiring at the appropriate age with the requisite years of service. The court stated: "The City and Loth never formed a contract obligating the City to provide Loth with no-premium-cost retirement health insurance benefits before Loth retired."[41]

¶133 The majority opinion proclaims its consistency with Loth and concludes that because the plaintiffs in the instant case had not retired at the time of the 2011 amendment to MCGO

---

[40] Loth v. City of Milwaukee, 2008 WI 129, ¶31, 315 Wis. 2d 64, 758 N.W.2d 766.

[41] Id., ¶43.

25

§ 17.14(7), the County's offer to reimburse the plaintiffs' post-retirement Medicare Part B premiums could still be revoked (as the offer of paid retiree health insurance was in <u>Loth</u>).[42]

¶134 The majority opinion overlooks the differences between <u>Loth</u> and the instant case and misreads <u>Loth</u>. <u>Loth</u> turns on the specific language used by the City employer to offer the particular health benefits at issue in that case. <u>Loth</u> correctly insists that "the terms of an employer's . . . offer are important in determining how an employee may accept the offer and give rise to a binding contract."[43]

¶135 <u>Loth</u> is relevant to the instant case, but not because it involves health benefits and not because the employee in <u>Loth</u> was required to fulfill enumerated prerequisites before receiving those health benefits at retirement. Rather, <u>Loth</u> is relevant because of the contrast between the language used by the City to offer the benefits at issue in that case and the language used by the County to offer the benefits at issue in the instant case.

¶136 In the instant case, Milwaukee County offered employment to the plaintiffs according to the terms set forth in the state session laws and the Milwaukee County ordinances governing MCERS. As I explained previously, these laws and ordinances provide that by accepting County employment, the plaintiffs enter into a vested benefit contract with the County. In the instant case, unlike in <u>Loth</u>, a binding bilateral

---

[42] Majority op., ¶¶42-43.

[43] <u>Loth</u>, 315 Wis. 2d 64, ¶31.

26

agreement was created when the plaintiffs were hired by the County.

¶137 I turn to the other two cases in the trilogy: <u>Welter</u> and <u>Rehrauer</u>. These opinions of the court of appeals have statewide precedential effect under Wis. Stat. § 752.41(2), which provides that "[o]fficially published opinions of the court of appeals shall have statewide precedential effect." These two opinions played no role in the <u>Loth</u> case. They were not cited or argued and are not referenced in the <u>Loth</u> decision.

¶138 In <u>Welter</u>,[44] the court of appeals considered a state session law and provisions of Chapter 36 of the Milwaukee City Charter relating to the City of Milwaukee Employees' Retirement System. The issue presented was whether City police officers were entitled to the disability benefits provided by the City's retirement system when they were hired, that is, whether their right to post-retirement disability benefits vested at hire or could be reduced by the City prior to the police officers' retiring.[45]

¶139 The language of the governing state session law, Chapter 441, Laws of 1947, is substantially similar to the

---

[44] For additional discussion of <u>Welter v. City of Milwaukee</u>, 214 Wis. 2d 485, 489, n.2, 13 N.W.2d 459 (Ct. App. 1997), see Justice Bradley's dissent in <u>Stoker</u>, ___ Wis. 2d ___, ¶¶51-52, 61.

[45] The precise benefit at issue in <u>Welter</u> was the police officers' right to the conversion age in effect when they were hired. The conversion age is the age at which a disabled police officer's retirement allowance is reduced from the more favorable Duty Disability Retirement Allowance level to the less favorable Service Retirement Allowance level.

27

language of the state session laws at issue in the instant case. Chapter 441, Laws of 1947 provides:

> Every such member . . . shall thereby have a benefit contract in said retirement system of which he [or she] is such member or beneficiary as of the effective date of this act . . . . Each member and beneficiary having such a [retirement system] benefit contract shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by other means without [the officer's] consent. . . . Every future entrant who shall become a member of this retirement system after the effective date of this act shall have a similar benefit contract and vested right in the annuities and all other benefits . . . .[46]

¶140 After considering the text of Chapter 441, Laws of 1947, the court of appeals in Welter determined that the disability benefits at issue vested when the plaintiff police officers became employees. Thus, the City could not amend Chapter 36 of the Milwaukee City Charter to deprive the police officers of those vested benefits.

¶141 The Welter court reasoned that the language of the governing state session law "[is] not ambiguous; [its] meaning is plain."[47] The same can be said of the state session laws governing the instant case. The Welter court went on to say: "Under [Chapter 441], retirement-plan benefits in effect when a Milwaukee police officer becomes a member of the retirement system are vested as to that officer unless the officer agrees to a change."[48]

---

[46] See Welter, 214 Wis. 2d at 489 n.2 (emphasis added).

[47] Id. at 491.

[48] Id.

¶142 The court of appeals rejected the City's argument that the employees' right to the disability benefits at issue vested at some later date, stating that "[t]his argument . . . ignores the legislative command that the critical date is not that of the duty-related disability but the date the officer becomes a member of the retirement system——the date he or she was first employed by the City as a police officer."[49]

¶143 Rehrauer, involving disability benefits for City of Milwaukee firefighters,[50] presented substantially similar issues as Welter. As in Welter, the benefits at issue were post-retirement disability benefits. As in Welter, the beneficiaries were City of Milwaukee employees. The same state session law (Chapter 441, Laws of 1947) and the same chapter of the Milwaukee City Charter (Chapter 36) governed the benefits at issue in Rehrauer as in Welter. The Rehrauer court concluded, as did the Welter court, that the City employees' benefits vested at the date of hire.

¶144 The terms of employment in the instant case are set forth in the state session laws and Milwaukee County ordinances discussed above, just as the terms of employment in Welter and Rehrauer were set forth in the state session law and City Charter provisions at issue in those cases. The language of the state session law at issue in Welter and Rehrauer is in all

---

[49] Id. at 494-95.

[50] The precise benefit at issue in Rehrauer was the firefighters' right to receive the Duty Disability Retirement Allowance for life rather than for a limited time.

29

material respects the same as the language of the state session laws governing the instant case.

¶145 Welter and Rehrauer are directly on point and should guide this court's decision in the instant case. The majority opinion is dismissive of Welter and Rehrauer, characterizing them as disability pension cases and the instant case and Loth as health benefit cases. Without further explanation or citation to any authority, the majority opinion simply asserts that pension benefits are a different type of benefit than health insurance, which is "a fluid opportunity for a limited period of time."[51]

¶146 Contrary to the majority opinion's assertion, health insurance, like a pension, can be a retirement benefit. The instant case is not a Loth case; it is a Welter/Rehrauer case. Unlike in Loth, Milwaukee County's offer to reimburse its employees' post-retirement Medicare Part B premiums in the instant case was not a unilateral offer. Unlike in Loth, the benefits at issue in the instant case are part of the County's retirement system.

¶147 Of course, the plaintiffs could not receive post-retirement benefits upon commencing their employment with the County. They first had to retire, complying with any enumerated prerequisites. But not immediately receiving post-retirement benefits simply does not mean the plaintiffs' right to reimbursement of their post-retirement Medicare Part B premiums

---

[51] Majority op., ¶50.

did not vest when they commenced their employment with the County.

¶148 In sum, the majority opinion is unpersuasive in its attempt at circumventing the language of the governing state session laws and the Milwaukee County ordinances. That language is clear: The plaintiffs have a vested right to reimbursement of their post-retirement Medicare Part B premiums. The 2011 amendment to MCGO § 17.14(7) constituted a breach of the plaintiffs' vested benefit contracts and a violation of the governing state session laws and Milwaukee County ordinances. The circuit court properly granted the plaintiffs' motion for summary judgment, and the court of appeals decision reversing the circuit court's order should be reversed.

¶149 For the reasons set forth, I dissent.

¶150 I am authorized to state the Justice ANN WALSH BRADLEY joins this opinion.